**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**FEBRUARY 1998 SESSION**



FILED

**April 1, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 02C01-9705-CR-00193** |
| Appellant, | ) | |
| | ) | **SHELBY COUNTY** |
| VS. | ) | |
| | ) | **HON. ARTHUR T. BENNETT,** |
| **KEITH A. JACKSON,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Sentencing) |


FOR THE APPELLANT:        FOR THE APPELLEE:


**CHARLES E. WALDMAN**        **JOHN KNOX WALKUP**
147 Jefferson Ave.        Attorney General & Reporter
Suite 1102
Memphis, TN 38103        **GEORGIA BLYTHE FELNER**
       Counsel for the State
       John Sevier Building
       425 Fifth Ave. North
       Nashville, TN 37243-0493

       **JOHN W. PIEROTTI**
       District Attorney General

       **LEE COFFEE**
       Asst. District Attorney General
       201 Poplar, Suite 301
       Memphis, TN 38103


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was indicted in January 1996 on charges of possession with intent to sell an amount of marijuana in excess of ten pounds and possession with intent to deliver marijuana in the same amount. On November 18, 1996, he pled guilty to possession with intent to sell an amount of marijuana under ten pounds, a Class E felony. After a hearing, he was sentenced to one year in the county workhouse and was fined twenty-five hundred ($2,500) dollars.

In this appeal as of right, the defendant argues that the trial court erred in denying his request for full probation. After a review of the record and applicable law, we find no error and affirm the judgment of the court below.

In August 1995, the defendant was arrested in Memphis after he was found transporting more than ten pounds of marijuana. At the sentencing hearing, he testified that a friend had asked him to take the marijuana by bus from Dallas, Texas, to Cincinnati, Ohio, and he had agreed. He explained to the court that at the time he had been at a "very weak point in [his] life" and had made a bad decision. He testified that this incident was the first and last time he had ever agreed to participate in such a transaction.

The defendant, who lives in Dallas, was twenty-seven years old at the time of his sentencing hearing. He had spent five years in the army, had served in Operation Desert Shield, and had received the Army Achievement Medal. He testified that after leaving the army, he had a difficult time both personally and financially. He explained that he had been very upset when his wife left him and took his children. His financial problems grew when he had to support his ailing mother and his younger brother who

2

was still in high school. On cross-examination, he admitted that his wife had left in November of 1993, nearly two years before his arrest. However, he did not obtain a divorce until April 1996.

The defendant testified that after leaving the army, he enrolled at the Art Institute of Dallas and financed his schooling though the G.I. Bill. It was at the school where he met Allen Banberry, the man who asked him to transport the marijuana. He testified that Banberry offered to pay him eighteen hundred dollars ($1,800) for making the trip. Because he was in school and had little money, the defendant agreed to Banberry's offer.

Since his arrest, the defendant has earned an associate's degree in music and video business and is employed by PDF Productions doing free-lance videography work. He also hosts and directs a television show in Dallas. Prior to this arrest, the defendant had no history of a previous criminal record or criminal behavior.

When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the specific sentence and the possible combination of sentencing alternatives, the court shall consider the following: (1) any evidence from the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing

3

and the arguments concerning sentencing alternatives, (4) the nature and characteristics of the offense, (5) information offered by the State or the defendant concerning enhancing and mitigating factors as found in T.C.A. §§ 40-35-113 and -114, and (6) the defendant's statements in his or her own behalf concerning sentencing. T.C.A. § 40-35-210(b). In addition, the legislature established certain sentencing principles which include the following:

> (5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and
>
> (6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

T.C.A. § 40-35-102.

After reviewing the statutes set out above, it is obvious that the intent of the legislature is to encourage alternatives to incarceration in cases where defendants are sentenced as standard or mitigated offenders convicted of C, D, or E felonies. However, it is also clear that there is an intent to incarcerate those defendants whose criminal histories indicate a clear disregard for the laws and morals of society and a failure of past efforts to rehabilitate.

The defendant now appeals and argues that he should have been granted full probation. The State argues that the defendant has no grounds for appeal because the defendant asked that his petition be denied. Apparently, the trial judge originally planned to sentence the defendant to 120 days with the remainder of the sentence to be served on probation. When defense counsel heard 120 days, he told the court that he

thought the defendant would actually serve less time if the trial court denied the defendant any probation and sentenced him to a full year. The trial judge said he was not convinced that the defendant would serve less time but that he would follow the defendant's request. As a result, the petition for probation was denied and the defendant was ordered to serve his sentence in the county workhouse.

The State argues that the defendant cannot appeal when it was his request that the petition be denied. We do not agree. The defendant took the "all or nothing" approach to the probation question. The trial judge felt that some period of incarceration was necessary, thus, the "nothing" option was inappropriate. Since the defendant was opposed to being given some incarceration, some probation, he requested the "all" option, which meant a complete denial of probation. We feel it is appropriate for this court to review the trial court's determination that this defendant was not a suitable candidate for full probation.

In sentencing the defendant, the trial judge stated that he felt the defendant had attempted to "pull the wool over the Court's eyes in that . . . it was your wife, grief for your wife leaving you and all of that that caused you to do this. That's not so truthful." The court based this statement on the fact that the offense occurred in August of 1995, and the defendant's wife had left him in November of 1993. The court was also reluctant to believe the defendant's story that the trip on which he had been arrested was his first. In fact, the trial judge stated, "[t]he Court doesn't believe this is your first time." The trial judge related that nearly every defendant came into his courtroom with the same story.

The trial judge also expressed concern that if he were to allow the defendant to serve his entire sentence on probation, the court would be sending a signal that Tennessee is "light" on those who commit this type of drug offense. He further told the

5

defendant, "I don't think you would benefit by [probation] because you need to know that there's going to be punishment. Because see, money will make you do a lot of things and money blinds you. And if you think you're getting away with this without any punishment then you may continue doing this."

The trial judge also noted that to grant the defendant's request would depreciate the seriousness of the offense. Thus, the judge announced a 120 days sentence with the remainder suspended. However, as noted above, the judgment was modified to reflect a denial of any probation.

Probation is a privilege that may be granted to a defendant deemed "eligible and worthy of this largesse of the law." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990). The defendant must carry the burden of establishing that he is entitled to this privilege. Dykes, 803 S.W.2d at 259. In that case, a panel of this Court determined that a denial of probation was proper based on the fact that the trial court found the defendant untruthful and on the need for deterrence. Dykes, 803 S.W.2d at 259-60. Generally, when deterrence is used to deny alternative sentencing, evidence in the record must illustrate the need to deter others from committing the offense. See State v. Bonestel, 871 S.W.2d 163, 168-69 (Tenn. Crim. App. 1993). However, in Dykes, this Court held that the sale or use of narcotics is "deterrable *per se*," even absent a record demonstrating a need for deterrence. 803 S.W.2d at 260. Following the Dykes rationale, we find that the trial court correctly denied the defendant's request for full probation based on the defendant's untruthfulness and the need for deterrence.

Therefore, we affirm the judgment of the court below.

_____
JOHN H. PEAY, Judge

6

CONCUR:


_____
JOSEPH B.  JONES, Judge


_____
THOMAS T. WOODALL, Judge